GEORGE F. KIMBALL, Guar., etc.

v.

OLIVER S. LINCOLN ET AL.

1. PARTNERSHIP ESTATE—PURCHASE BY SURVIVOR—ACCOUNTING.—A, B and C were joint owners of a mill, and engaged in carrying on the milling business as co-partners. B died, leaving his will, in which he devised his estate, both real and personal, to his minor son, and authorized his executors to sell and convey at public or private sale, his real estate to such persons as they might see fit, and on such terms they might deem best, the proceeds to belong to the son. After his death, A and C, as surviving partners, continued the business for several years, without accounting to the representatives of the deceased partner; when C purchased of the executors the interest of the deceased partner in the estate, both real and personal. Upon a bill filed by the guardian of the son against the surviving partners for an accounting, *held*, that the purchase by C cannot be set up as a bar to the prayer for an account.

2. SURVIVING PARTNER—RELATION TO ESTATE.—Notwithstanding the dissolution of a partnership occasioned by the death of one of the partners, a community of interest still exists between the survivor and the representatives of the deceased partner, and the partnership is considered as having a limited existence until its affairs are settled up; and until this is accomplished, the surviving partners stand in the relation of trustees to the partnership estate, while creditors and heirs-at-law or devisees of the deceased partner occupy the position of *cestuis que trust*.

3. PURCHASE BY ONE OCCUPYING A TRUST POSITION.—While it is a rule of law and equity that an executor or administrator has an absolute power of disposal over the personal effects of his testator or intestate, and that, as a general rule, they cannot be followed by creditors or legatees, an exception exists in the case of a purchase by one standing in a relation

of trust or confidence with respect to the subject matter of the sale. In ·such cases, the purchaser takes the legal title, but it is charged with the liability to be set aside at the instance of the *cestui que trust*, if he makes his application in a reasonable time; and in such case it is immaterial whether the sale was a beneficial one or not. It is enough that the *cestui que trust* has chosen to come into court and ask that the sale may be disregarded, so far as it stands in the way of an accounting.

4. Partner may not charge for services.—In the absence of an agreement for compensation, a partner is not permitted to charge for his personal services in managing the partnership business during the continuance of the co-partnership; and the same rule applies to a surviving partner while engaged in winding up the business and disposing of the partnership assets.

Appeal from the Circuit Court of Cook county; the Hon. W. W. Farwell, Judge, presiding. Opinion filed March 2, 1880.

Messrs. G. W. & J. T. Kretzinger, for appellant; as to the duty of a surviving partner, cited Rev. Stat. Chap. 3, §§ 86, 87, 88.

Surviving partners are trustees of the partnership estate: Phillips v. Ackerson, 2 Bro. Ch. 272; Hartz v. Schrader, 8 Ves. 317; Burden v. Burden, 1 Ves. & B. 170; Washburn v. Goodman, 17 Pick. 519; Nelson v. Hayner, 66 Ill. 487.

The sale by the surviving partner to himself is void: Sherlock v. Winnetka, 59 Ill. 389.

Surviving partners are liable to account to the heirs: Ogden v. Astor, 4 Sandf. 334; Farnam v. Brooks, 9 Pick. 234.

In the absence of special contract a partner cannot charge for services in the firm business: Tillotson v. Tillotson, 34 Conn. 366; Collyer on Partnership, § 199; Story on Partnership, § 33; 3 Kent's Com. 64; Beatty v. Wray, 19 Pa. St. 516; Washburn v. Goodman, 17 Pick. 519; Burden v. Burden, 1 Ves. & B. 171; Brown v. McFarland's Ex'r, 41 Pa. St. 133; Schenke v. Dana, 118 Mass. 239.

Upon the jurisdiction in chancery to compel an accounting: Heward v. Slagle, 52 Ill. 336.

Mr. Francis E. Clarke and Messrs. Cook & Upton, for appellees; as to the right of an executor to sell personal property,

cited 2 Williams on Executors, 998; Rayner v. Pearsall, 3 Johns. Ch. 578.

He may sell to the surviving partners the interest of the deceased in the firm assets: Ray v. Vilas, 18 Wis. 189; Chambers v. Howell, 11 Beav. 6; Williams v. Ely, 13 Wis. 1; Munteith v. Rahn, 14 Wis. 210; Hoyt v. Sprague, 12 Chicago Legal News, 25.

A failure of the surviving partner to file an inventory, if no loss occurs, does not create a liability against him: Oliver v. Forrester, 1 Ill. Syn. Rep. 151.

With the assent of the executors, surviving partners may receive compensation for services rendered the partnership estate: Collyer on Partnership, § 345; Ambler v. Bolton, 41 Law Jour. 783; Hite v. Hite, 1 B. Mon. 179; Willett v. Blanford, 1 Hare, 253; Griggs v. Clark, 23 Cal. 427; Schenke v. Dana, 118 Mass. 239.

WILSON, J. This was a bill in chancery brought by appellant, as guardian of Weston G. Taft, against Oliver S. Lincoln and Lydia F. Kimball, executors of the last will and testament of John W. Taft, deceased, and Lorenzo D. Warren and Charles B. George, as surviving partners of the firm of Warren, Taft & Co., praying for an account and other relief.

John W. Taft died in December, 1870, leaving his will, in and by the terms of which he bequeathed to his wife, Lydia F. Taft (now Lydia F. Kimball), his household furniture and all the residue of his estate to his son and only child, Weston G. Taft. He directs his executors to convert his real estate into money as soon after his death as it can be done advantageously, and to the best interest of the estate, the avails and money arising therefrom he gives to his son Weston G. Taft. For the purpose of carrying into effect the provisions of his will, he authorizes his executors to sell the real estate at public or private sale, for such sum or sums as they may see fit, and on such terms of payment as they may think advisable, and to such person or persons as they may deem proper, and to make the necessary deeds of conveyance therefor. He appoints his wife, Lydia F. Taft, as executrix, and Oliver S. Lincoln, as ex-

Kimball v. Lincoln.

ecutor of his will, and then authorizes them to lease his real estate until it shall be sold, and to receive the rents therefor, which he also bequeaths to his son, Weston G. Taft.

Prior to and at the time of his death John W. Taft was the owner of a one-fourth interest in a flouring mill and milling property at Waukegan, Illinois. Warren being the owner of an undivided one-half, and George of an undivided one-fourth interest therein, and he was engaged with them under the firm name of Warren, Taft & Co., in carrying on the milling business, buying grain, manufacturing and selling flour, etc. After the death of Taft, Warren and George continued in the occupancy and use of the mill, conducting the business under the old firm name, until the 8th day of February, 1875, at which time the executors sold and conveyed to George, Taft's one-fourth interest in the property, both real and personal, for the sum of five thousand dollars. The consideration expressed in the deed of realty is $4,000, and of the personal estate $1,000, but the evidence shows that these sums were only nominal, and that the property was sold in bulk for five thousand dollars.

The bill alleges that the income and profits of the business from the time of the death of Taft down to the date of the sale to George were large, and that Weston G. Taft is entitled to one-fourth part thereof, as devisee under his father's will; that the executors never required, and Warren and George never made any statement to the executors prior to the sale to George, showing the assets and liabilities of the firm, and rendered no account to them of the earnings of the mill, and profits of the business; and that the price at which the property was sold was grossly inadequate. The bill further alleges that Warren and George, as surviving partners, never made and returned to the County Court as required by the statute, a list of the liabilities and assets of the firm, together with an appraisement of the partnership estate.

The answer of Warren and George denies that the income and profits of the business, subsequent to the death of Taft, were large, and claims they were not a fourth part of the amount stated in the bill; admits that they never rendered any account

or statement to the executors, showing the condition of the estate or of the income or profits of the business subsequent to the death of Taft, but alleges that the price agreed to be paid by George for Taft's interest was much more than its actual value, and was highly beneficial to Taft's estate; denies that they never made any return to the County Court, as required by law, and avers that they made such return on the 8th day of February, 1871, which being deemed insufficient, they subsequently filed an amended return, which was on file in the. County Court before this suit was commenced, but they do not state when the amended return was filed.

The bill charges that Warren and George, as surviving partners, occupy the relation of trustees of the property and assets of the firm, and that any purchase made by them, or either of them, from the executors of Taft, of Taft's interest in the partnership effects, is as to creditors or beneficiaries under the will null and void.

It appeared in evidence at the hearing of the case in the court below, that in arriving at the estimated value of Taft's interest in the partnership estate, a charge of $2,572.91, was made by the surviving partners, and allowed by the executors against Taft, for time lost by him, being at the rate of five hundred dollars a year, and covering a period beginning prior to his death and continuing down to the time of the sale to George, over four years subsequent to the death of Taft.

The two principal questions arising in the case, and which alone we deem it necessary to consider, are first, whether the purchase by George can operate as a bar to the complainant's right to account; and secondly whether the charge for lost time by Taft is a legal and proper one.

The relations that subsist between surviving partners and the creditors and beneficiaries of the estate of a deceased partner, are very tersely summarized by Mr. Justice McAllister, in Nelson v. Hayner, 66 Ill. 487. He says:

" The death of either partner is *ipso facto*, from the time of the death, a dissolution of the partnership. But notwithstanding such dissolution, a community of interest exists between the survivor and the representatives of the deceased partner, and

Kimball v. Lincoln.

the representatives have the right to insist on the application of the joint property to the payment of the joint debts, and a due distribution of the surplus. So long as these objects remain to be accomplished, the partnership may be considered as having a limited continuance. If the survivor does not account in a reasonable time, a court of chancery will grant an injunction to restrain him from acting, and appoint a receiver and direct an account to be taken. These comprise the general outlines of the relations between surviving partners and the representatives of a deceased partner, and constitute the former trustees, with the fiduciary relation subsisting between them and the latter, of trustees to the *cestui que trust.*"

At the time of his purchase of Taft's interest, George occupied the position of a trustee of the partnership estate, and Weston G. Taft that of *cestui que trust.* And while it is a rule of law and equity that an executor or administrator has an absolute power over the personal effects of his testator or intestate, and that as a general rule they cannot be followed by creditors or legatees, an exception exists in the case of a purchase by a person standing in a relation of trust or confidence with respect to the subject-matter of the sale. In such cases the purchaser takes the legal title, but it is charged with the liability to be set aside at the instance of the *cestui que trust*, if he make his application within a reasonable time.

In Davidson v. Gardner, decided in 1743, Lord Hardwick said the court always looks with a jealous eye at a trustee purchasing of his *cestui que trust;* and in Whelpdale v. Cookson, 5 Ves. 682, the chancellor would not permit a purchase at auction to stand, as he said he knew the dangerous consequences of sanctioning dealings of a trustee with the property of a *cestui que trust.*

In Campbell v. Walker, 5 Ves. 678, the Master of the Rolls says:

"I will lay down the rule as broad as this, and I wish trustees to understand it, that any trustee purchasing a trust property, is liable to have the purchase set aside, if at any reasonable time the *cestui que trust* chooses to say he is not satisfied with it. They must buy with that clog."

In Monroe v. Allaire, 2 Caines' Cases in Error, 183, Mr. Justice Benson, in delivering the opinion of the court, uses the following language:

"It is a principle that a trustee can never be a purchaser, and I assume it as not requiring proof that this principle must be admitted, not only as established by adjudication, but also as founded in indispensable necessity, to prevent that great inlet of fraud, and those dangerous consequences which would ensue if trustees themselves might become purchasers, or if they were not in every respect kept within compass."

Again, in the case of Aberdeen Railway Co. v. Blaikie, decided in the House of Lords in 1854, 1 McQueen, 461, Lord Cranworth, in delivering the opinion of the court, says:

"It is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have a personal interest conflicting, or which may possibly conflict with the interest of those whom he is bound to protect. So strictly is this principle adhered to, that no question is allowed to be raised as to the fairness of such a contract so entered into. It obviously is or may be impossible to demonstrate how far in any particular case the terms of such a contract may have been the best which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt or attempted to deal with the estate or interest of those for whom he is a trustee, have been as good as could have been obtained from any other person; they may at the time have been even better. But still so inflexible is the rule, that no inquiry on that subject is permitted."

Chancellor Kent, in an exhaustive opinion delivered in the leading American case of Davone v. Fanning, 2 Johns. Ch. 251, reviews the English decisions, and lays down the same rule as is indicated in the foregoing quotations. In speaking of the rights and duties of persons standing in a position of trust or confidence with respect to property committed to their charge, he says:

"The danger of temptation does, out of the necessity of the case, work a disqualification; nothing less than incapacity being able to shut the door against temptation, and the wise pol-

icy of the law has therefore put the sting of disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation."

The rule of which we are speaking is applicable to all persons placed in situations of trust or confidence with reference to the subject-matter of the contract, and embraces trustees, executors and administrators, guardians, surviving partners, agents, solicitors, etc.   Story on Agency, 8th Ed. § 211, and notes.

In the light of these authorities we hold that the purchase by George of Taft's interest in the partnership property cannot be set up as a bar to the right of the complainant to an accounting.   Nor does the fact that the purchase was made from the executors alter the rule.   It was but the purchase by one trustee from another, who under the will also occupied the position of trustee of the property which was the subject-matter of the contract.   And whether the sale was an advantageous one or not, is wholly immaterial.   It is enough that the *cestui que trust* has chosen to come into court and ask that the sale may be disregarded in so far as it stands in the way of an accounting.   He has come in a reasonable time, and is entitled to the relief he seeks.

The defendants, Warren and George, allege in their answer, that after the death of Taft they, as surviving partners, duly made out and filed in the county court a list of the partnership liabilities and assets, as required by law.   It is sufficient to say that we find no satisfactory proof in the record to sustain this allegation; and if we did, it could in no manner relieve them from the duty of accounting, after having remained in the use and occupancy of the mill for so long a period, making, as is claimed, large profits, and never having rendered any account or statement to the executors of the business or condition of the estate.

The charge of $500 a year for loss of time by Taft was in effect an allowance to Warren and George for that amount as additional compensation for their services in conducting the partnership business.   In the absence of an agreement for compensation, a partner is not permitted to charge for his personal services in managing the partnership business during the con-

tinuance of the partnership; and the same rule applies to surviving partners while engaged in winding up the business and disposing of the partnership assets.

Cases sometimes occur where, from the nature of the business, and to save the estate from losses that might otherwise result, it becomes necessary to continue the business for a time to finish existing contracts, or to use up valuable materials on hand to the best advantage, thereby delaying a speedy settlement of the partnership affairs, compensation has been allowed the surviving partner, with the consent of the administrator of the deceased partner. Thus in Schenkle v. Dana, 118 Mass. 236, where the property of a firm consisted of patent rights for valuable improvements in weapons of war, together with the machinery, tools and stock required for their manufacture, and of government contracts for the supply of weapons; one of the partners died, and the surviving partner, with the assent of the administrator of the deceased partner, employed extra labor to finish existing contracts, and entered upon new contracts, employing the machinery, patents and property of the firm, it was held that, to the extent of his personal services devoted to such extra work, he was entitled to compensation.

And the same distinction is recognized in Willet v. Blanford, 1 Hare, 253, and cases were cited. See also Lindley on Part 3d ed. 1034. These excepted cases only go to confirm the general rule, that in the absence of an agreement for compensation, and where there are no special circumstances to take the case out of its operation, compensation is not allowable. We see nothing in the facts of the present case to bring it within any exception. So far as appears, the business was conducted by the surviving partners, after the death of Taft, in all respects as it had been during his life-time. No extra services were performed by them, and no special circumstances intervened rendering their duties more arduous, or their services more valuable than they were prior to the death of Taft.

The delay in closing up the partnership affairs for a period of four years did not result from the necessities or peculiar nature of the business, but from their own inaction. In the case of McFarlan's Executors, 41 Penn. St. 133, the court says:

Kimball v. Lincoln.

"As surviving partners, Brown and Caldwell would have been entitled, after McFarlan's death, to work up the stock on hand at the Phœnix furnace, and to close up the business of the partnership, but for this service would have no right to charge the estate of their deceased partner with anything more than their necessary outlay for expenses. As compensation for their personal services they were not entitled to charge."

In the present case the assent of the executors does not aid the surviving partners in sustaining the charge against the estate of Taft. The powers specified in the will were the limit of the executors' authority; and the will does not, either in terms or by implication, authorize the executors to consent to such a charge. In the case last cited, the court says:

"We agree with the auditors in their view that there is nothing to take this case out of the ordinary rule of law, and if the executors' agreement was designed to do so, it was void for defect of authority."

And in the case of Schenkle v. Dana, *supra*, Mr. Justice Colt says:

"Under the general rule above stated, all that can be required of the surviving partner is, that he proceed at once to wind up the partnership, and account with the legal representatives of the deceased partner. In the absence of any agreement, he is entitled to no pay for his personal services in the strict discharge of his duties."

In Tillotson v. Tillotson, 34 Conn., the court says:

"As surviving partner he was not entitled to compensation for services rendered after the dissolution of the partnership, in the absence of an express contract to that effect."

These decisions are in harmony with all the authorities, and we are therefore of the opinion that the charge of $2,572.91 for lost time was inadmissible, and should be stricken out in taking the account.

For the reasons hereinabove expressed, we think the court below erred in dismissing the bill, and the decree must be reversed and the case be remanded, with directions that it be referred to a master to take an account, and for such further proceedings as the nature of the case may require.

Reversed and remanded.